investigations and arrests, the debriefing of cooperating witnesses and confidential informants, and the execution of warrants related to various types of criminal activity including drug-trafficking. I have experience with a variety of investigative techniques, including but not limited to (i) executing search warrants; (ii) reviewing and analyzing communications among members of criminal groups, including electronic messages; (iii) obtaining and analyzing location information for cellular telephones; (iv) conducting physical surveillance; (v) reviewing surveillance footage; and (vi) interviewing suspects and witnesses.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

4. The property to be searched is an iPhone 13 Pro Max, serial number DWF4QW7YGG, hereinafter the "Device." The Device is currently in government custody in the Eastern District of New York.

5. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

**PROBABLE CAUSE**

6. On October 28, 2022, a grand jury sitting in this district indicted GORAN GOGIC for one count of conspiracy to violate the Maritime Drug Law Enforcement Act ("MDLEA") and three substantive counts of violating the MDLEA, in violation of 46 U.S.C. §§ 70503(a)(1), 70503(b), 70504(b)(2), 70506(a) and 70506(b), and 21 U.S.C. § 960(b)(1)(B)(ii). See United States v. Goran Gogic, 22-CR-493 (ARR). That indictment arose

2

from an extensive federal investigation into the criminal activities of a vast international narcotrafficking conspiracy. GOGIC and his co-conspirators used commercial container maritime vessels that transited from South America to the United States and Europe to transport cocaine for cartels located in the Balkans.

7. In connection with this investigation, U.S. law enforcement intercepted and seized three massive cocaine shipments from commercial container ships, which are reflected in the three substantive MDLEA violations charged in the GOGIC indictment. Specifically, in February 2019, federal agents seized approximately 1,437 kilograms of cocaine from the MSC Carlotta at the Port of New York and New Jersey; in March 2019, federal agents seized approximately 537 kilograms of cocaine from the MSC Desiree at the Port of Philadelphia; and in June 2019, federal agents seized approximately 17,956 kilograms of cocaine from the MSC Gayane at the Port of Philadelphia. The seizure of cocaine from the MSC Gayane—the estimated value of that cocaine was over $1 billion—was one of the larges seizures of cocaine in United States history.

8. The evidence against GOGIC includes, <u>inter alia</u>, communications he conducted over the Sky ECC network. Sky ECC was a subscription-based end-to-end encrypted messaging application, formerly operated by Sky Global. Sky Global sold specially modified cellphones, hereinafter "Sky Phones," which operated on the Sky ECC network and were intended to be more secure than typical cell phones. International criminal organizations made extensive use of Sky Phones and the Sky ECC network until a multinational law enforcement operation in early 2021 dismantled the Sky ECC infrastructure, seized its servers, and began decrypting a large cache of communications that remained on those servers.

9. The government has obtained from European law enforcement voluminous records of GOGIC's communications on two Sky Phones (or two Sky ECC accounts). The government's review of those communications is ongoing. To date, the government has identified within those communications, <u>inter alia</u>, explicit planning and discussion of narcotics trafficking, photographs of narcotics and parts of the container ships that were used to transport narcotics, references to the specific cocaine seizures described above (and for which GOGIC is charged), and an explicit solicitation by GOGIC to arrange the murder of an individual whom GOGIC believed to be a law-enforcement informant.[1]

10. In addition to GOGIC's overtly criminal communications on the Sky Phones, the Sky ECC data also includes attribution evidence that ties those communications to GOGIC. For instance, GOGIC's (formally anonymous) communications on his Sky Phones include references to international travel that correspond to airline and hotel records in GOGIC's true name; a reference to what appears to be a birthday dinner on GOGIC's true birthdate; audio recordings in GOGIC's voice; photographs of a young child that appears to be GOGIC's child; and photographs that include distinctive property (<u>e.g.</u>, watches, vehicles, clothing, boxing and gym equipment), distinctive locations (hotels, gyms), and "selfies" with the face obscured but which otherwise match GOGIC's appearance.

11. On October 30, 2022, GOGIC was arrested as he was boarding a flight departing Miami, Florida en route to Zurich, Switzerland. GOGIC made an initial appearance in

---

[1] That individual was subsequently murdered in Colombia.

the Southern District of Florida, was removed in custody to the Eastern District of New York, and was ordered detained pending trial.

12. The Device is a personal iPhone that GOGIC was carrying at the time of his arrest, and it was seized incident to arrest. It has been in the continuous lawful possession of HSI since that time and is currently in government custody within the Eastern District of New York. The Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of HSI.

13. In my training and experience, people who carry personal cellphones typically carry them all or nearly all the time and use them in ways that generate abundant attribution evidence of the type described above with reference to the attribution evidence from GOGIC's Sky Phones. Indeed, it is very likely that GOGIC used the Device in some of the same ways that he used his Sky Phones, and that the Device therefore contains, e.g., evidence of travel, and photographs of distinctive objects, locations, and individuals (including GOGIC's child). Any information on the Device that matches the attribution evidence on GOGIC's Sky Phones—e.g., geolocation data stored on the device that matches travel reflected on the Sky Phones, usernames or passwords that overlap those used or recorded in the Sky Phones, audio voice recordings, or photographs or other information that show the same individuals, locations, or objects that are depicted in the Sky Phones—is therefore attribution evidence that further ties GOGIC to the Sky Phones and thus to the charged crimes.

5

14. Accordingly, I submit that there is probable cause to believe that a search of the Device will reveal evidence of crime, including attribution evidence that corresponds to evidence from the Sky ECC data.

## TECHNICAL TERMS

15. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved

7

in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

    f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

16. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

17. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed

9

via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

18. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

h. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

i. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

j. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

k. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the

application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

l. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

19. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

20. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

11

## **CONCLUSION**

21.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*[signature]*

Brandon Jaldin
Special Agent
Department of Homeland Security, Homeland Security Investigations

Subscribed and sworn to before me
by telephone on February 26, 2024:

*Cheryl Pollak*
HONORABLE CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ATTACHMENT A

The property to be searched is an iPhone 13 Pro Max, serial number DWF4QW7YGG, hereinafter the "Device." The Device is currently in government custody in the Eastern District of New York.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.	All records on the Device described in Attachment A that relate to violations of 46 U.S.C. §§ 70503(a)(1), 70503(b), 70504(b)(2), 70506(a) and 70506(b), and 21 U.S.C. § 960(b)(1)(B)(ii) and involve GORAN GOGIC since 2018, and attribution evidence linking GORAN GOGIC to those crimes, including:

   a. lists of drug- and transport-related contacts and related identifying information;

   b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. any information recording GOGIC's schedule or travel, including geolocation data, from 2018 to the time of his arrest;

   e. photographs and other records of distinctive locations, objects, events, and persons;

   f. all bank records, checks, credit card bills, account information, and other financial records.

2.	Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigative agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of New York

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)* )<br>)<br>AN IPHONE 13 PRO MAX, SERIAL NUMBER )<br>DWF4QW7YGG, IN GOVERNMENT CUSTODY IN THE )<br>EASTERN DISTRICT OF NEW YORK ) | Case No.  24-MJ-174 |

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the   Eastern   District of   New York
*(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A (incorporated by reference).

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B (incorporated by reference).

**YOU ARE COMMANDED** to execute this warrant on or before   3/11/24   *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   the Duty Magistrate Judge  .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   2/26/24   1:45 pm           *Cheryl Pollak*
                                                                   Judge's signature

City and state:   Brooklyn, New York           Hon. Cheryl L. Pollak   U.S.M.J.
                                                              *Printed name and title*